UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────

ASHLEY W.,[1]

                                    Plaintiff,                Case # 20-CV-1410-FPG

v.                                                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
─────────────────────────────────────

## INTRODUCTION

Plaintiff Ashley W. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 19, 20. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In June 2017, Plaintiff applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 95. She alleged disability since April 2012 due to traumatic brain injury, anxiety, depression, post-traumatic stress disorder ("PTSD"), and anger issues. Tr. 95-96. In June 2019, Administrative Law Judge John R. Allen ("the ALJ") issued a decision finding that Plaintiff is not

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 11.

1

disabled. Tr. 15-28. In July 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 2017, her application date. Tr. 17. At step two, the ALJ found that Plaintiff had severe impairments of traumatic brain injury, generalized back pain, personality disorder with anxiety and depression, polysubstance abuse disorder, and migraines. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 18.

Next, the ALJ determined that Plaintiff had the RFC to perform light work with additional limitations. Tr. 20. At step four, the ALJ found that Plaintiff cannot perform any past relevant work. Tr. 26. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 26-28. The ALJ therefore found that Plaintiff was not disabled. Tr. 28.

### II. Analysis

Plaintiff argues that the ALJ erroneously considered and weighed three medical opinions and, as a result, essentially formulated a "mental and cognitive RFC on his own without any medical authority." ECF No. 19-1 at 18. The Court disagrees and concludes that remand is not warranted.[3]

#### a. Opinion of T. Bruni

Plaintiff first contends that the ALJ erroneously gave partial credit to the opinion of state agency consultant T. Bruni, Ph.D. *See* ECF No. 19-1 at 18. She asserts that Dr. Bruni's opinion,

---

[3] In passing, Plaintiff observes that the ALJ erroneously relied on earlier, superseded regulations to evaluate the opinion evidence. *See* ECF No. 19-1 at 19 n.13; *see* Tr. 25-26  Because Plaintiff articulates no prejudice arising from this error, remand is not justified.

which was based on medical records from November 2015 to June 2017, became stale due to the subsequent deterioration of her condition—specifically, "signs of psychosis and multiple personalities." ECF No. 25 at 6; *see also* ECF No. 19-1 at 18-19.  The Court is not persuaded.

As a general matter, there "is no requirement that opinion sources have access to the complete record." *Alicia C. v. Comm'r of Soc. Sec.*, No. 17-CV-1235, 2019 WL 1470827, at *9 (N.D.N.Y. Apr. 1, 2019).  While in some cases an opinion "that is not based on a complete medical record cannot constitute substantial evidence," *Weston v. Colvin*, No. 16-CV-272, 2017 WL 4230502, at *4 (W.D.N.Y. Sept. 25, 2017), there is no "unqualified rule that a medical opinion is superseded by additional material in the record." *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order).  The relevance of an opinion will depend on the contents of the opinion and the character of any subsequent medical evidence.  *See id.* (consulting psychologist's opinion did not become stale where the new medical evidence did "not raise doubts as to the reliability of [his] opinion").  "[A] medical opinion may be stale if it does not account for the plaintiff's deteriorating condition." *Tammy B. v. Comm'r of Soc. Sec.*, No. 20-CV-44, 2021 WL 2155099, at *4 (W.D.N.Y. May 27, 2021) (internal brackets omitted).

In this case, the ALJ reasonably concluded that Plaintiff's psychological condition had not deteriorated over time, and, therefore, he could reasonably rely on Dr. Bruni's opinion despite the passage of time. *See Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021) (noting that the "[t]he mere passage of time does not necessarily render a medical opinion outdated or stale" and that "[a] more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age").

Plaintiff has long received treatment for her mental health conditions, including depression, anxiety, PTSD, and bipolar disorder, *see* Tr. 95-96, 313, 412, but her complaints of psychosis and

5

hallucinations are more intermittent. At a May 2017 mental health appointment, Plaintiff denied symptoms of hallucinations/psychosis during the preceding six months. Tr. 427. On August 13, 2017, at a consultative examination with Gregory Fabiano, Ph.D., Plaintiff reported visual hallucinations. Tr. 314.

On August 21, 2017, Dr. Bruni issued the medical opinion at issue. Tr. 101. After reviewing the records then available, Dr. Bruni opined, *inter alia*, that Plaintiff could perform the basic mental demands of unskilled work but was moderately limited in several functional areas due to her mental impairments. *See* Tr. 100-01, 104-06.

In October 2017—after Dr. Bruni's opinion—Plaintiff reported having auditory and visual hallucinations at a mental health appointment. Tr. 403. She was prescribed medication for "psychosis and mood stabilization." Tr. 404. At an April 2018 appointment, Plaintiff reported no perceptual disturbances and indicated that she had not suffered from visual or auditory hallucinations in the last six months. Tr. 378, 382. In September, October, and November 2018, Plaintiff denied auditory or visual hallucinations. Tr. 333, 343, 353. In January 2019, Plaintiff denied auditory or visual hallucinations but stated "that she has 2 personalities"—"one by the name of Tina which started around 2006 . . . . [and one] by the name of Ashcash which appeared in 2011." Tr. 470. Plaintiff's medication "for psychosis" was increased. Tr. 474. At the March 2019 hearing, Plaintiff clarified that these two personalities are two voices that she hears, who argue with each other. Tr. 51. Plaintiff also testified that she hears voices "[a]ll the time" and has visual hallucinations "[s]ometimes." Tr. 47.

The ALJ concluded that Dr. Bruni's opinion was consistent with the record then available as well as the "[s]ubsequent evidence received at the hearing level." Tr. 26. Although the ALJ acknowledged that Plaintiff sometimes reported hallucinations, he believed these were intermittent

and resolved over time.[4]  *See* Tr. 24, 26.  The ALJ therefore gave "significant but partial weight" to Dr. Bruni's opinion.  Tr. 25.

Primarily citing the January 2019 treatment note—which indicated that Plaintiff heard the voices of "2 personalities," Tr. 470—Plaintiff argues that her condition deteriorated over time, insofar as she "start[ed] to show the sign of psychosis and multiple personalities." ECF No. 25 at 6.  However, at most, "[t]his evidence simply demonstrates Plaintiff's position finds some support in the record." *Brenda W. v. Comm'r of Soc. Sec.*, No. 20-CV-1056, 2022 WL 446462, at *6 (W.D.N.Y. Feb. 14, 2022).  "But under the substantial evidence standard of review, it is not enough for [P]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [her] position." *Id.* (internal quotation marks and brackets omitted). "[T]o obtain remand, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *Id.*  Plaintiff cannot do so.

There is ample evidence that Plaintiff did not deteriorate into a state of psychosis over time. To the contrary, Plaintiff consistently reported no hallucinations during the relevant period.  *See* Tr. 427 (stating in May 2017 that she had suffered from no hallucinations in the last six months); Tr. 378, 382 (stating in April 2018 that, after having received medication for psychosis and mood stabilization, she had suffered from no hallucinations for the last six months); Tr. 333, 343, 353 (denying hallucinations in September, October, and November 2018).  Based on this evidence, the ALJ could reasonably find that, although Plaintiff suffered from hallucinations intermittently, they resolved through treatment and did not pose a constant, let alone debilitating, limitation to

---

[4] Plaintiff asserts that the ALJ mischaracterized the record when he stated that Plaintiff's hallucinations "resolved in 2018" through treatment.  Tr. 26; *see* ECF No. 19-1 at 23.  This is a reasonable summation of the record evidence, however: Plaintiff reported being free from hallucinations in 2018, after receiving medication in October 2017.  *See* Tr. 378, 382.  While the ALJ did not explicitly acknowledge Plaintiff's January 2019 treatment note, it is clear that the ALJ reviewed that portion of the record, *see* Tr. 24, and an ALJ is "not required to discuss every piece of evidence submitted." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

Plaintiff's ability to function. *See* Tr. 24. Plaintiff's opposing evidence may have revealed "a factual conflict in the record"—the severity and consistency of Plaintiff's hallucinations—but it was a conflict "the ALJ was entitled to resolve." *Emery S.*, 2021 WL 2592363, at *4.

Plaintiff also asserts that, while purporting to give partial credit to Dr. Bruni's opinion, the ALJ's RFC is inconsistent with the opinion. ECF No. 19-1 at 20. She claims that Dr. Bruni found that Plaintiff "ha[d] moderate limitations with respect to the general public *and* co-workers," ECF No. 25 at 4 (emphasis added), yet the ALJ drew a distinction between those two groups, concluding that Plaintiff could only superficially interact with the general public but could occasionally interact with coworkers. *See* Tr. 20. However, the premise of Plaintiff's argument is incorrect: Dr. Bruni did not equate Plaintiff's social limitations vis-à-vis coworkers and her social limitations vis-à-vis the general public. Rather, Dr. Bruni opined that Plaintiff was moderately limited in her ability to merely "*interact appropriately* with the general public," while stating that she was moderately limited in her ability to "*get along with* coworkers or peers *without distracting them or exhibiting behavioral extremes.*" Tr. 105 (emphases added). These are two different types of social limitations, and Plaintiff fails to explain why they would have necessitated the same functional restrictions.[5] *See* ECF No. 25 at 4-5.

Accordingly, remand is not warranted on these bases.

### b. Opinion Of Gregory Fabiano

Plaintiff contends that, in several respects, the ALJ erred in his treatment of the opinion of consultative examiner Gregory Fabiano, Ph.D.

---

[5] In this respect, Dr. Bruni's opinion may be contrasted with that of consultative examiner Gregory Fabiano, Ph.D., who opined that Plaintiff had a moderate limitation "in her ability to interact adequately with supervisors, coworkers, *and* the public," Tr. 316, which more clearly suggests that the same social limitations existed for all three groups.

First, Plaintiff asserts that Dr. Fabiano's opinion is internally contradictory, insofar as he opines that Plaintiff has several moderate limitations but that she is "ab[le] to function on a daily basis." Tr. 316-17; *see also* ECF No. 25 at 7. The Court fails to see a contradiction. Dr. Fabiano's opinion may be reasonably construed to mean that Plaintiff has several limitations in certain discrete functional areas but that, *as a general matter*, and *notwithstanding those particular deficiencies*, Plaintiff can "function" in her day-to-day activities, *i.e.*, on "a daily basis." Tr. 317. Plaintiff advances no authority to support her opposing interpretation of that language.[6]

Second, Plaintiff argues that Dr. Fabiano's finding that Plaintiff is moderately limited in her ability to interact with "supervisors, coworkers, and the public" is inconsistent with the ALJ's restrictions, which differentiated between those groups. *See* Tr. 20 (identifying no restrictions with respect to supervisors and stating that Plaintiff may occasionally interact with coworkers and superficially interact with the general public). This claim does not justify remand. "An ALJ's RFC assessment need not perfectly correspond with a medical opinion in the record." *Whited v. Comm'r of Soc. Sec.*, No. 19-CV-887, 2020 WL 8675800, at *2 (W.D.N.Y. July 23, 2020). An ALJ is free to partially credit multiple medical opinions, *see id.*, which is what the ALJ chose to do here. *See* Tr. 25-26. Given the correspondence between the social limitations identified by Dr. Bruni and those found by the ALJ, it is evident that the ALJ credited Dr. Bruni's view of Plaintiff's social limitations over those identified by Dr. Fabiano. *Compare* Tr. 20, *with* Tr. 105-06. *See also Chelsea V. v. Comm'r of Soc. Sec.*, No. 20-CV-507, 2021 WL 2649650, at *4 (W.D.N.Y. June 28, 2021) (noting that an ALJ's reasoning need not be "fully explicit" so long as a court can "glean

---

[6] In a similar vein, Plaintiff asserts that the ALJ's "highly detailed" RFC restrictions are inconsistent with Dr. Fabiano's general statement that Plaintiff's impairments do not interfere with her "ability to function." ECF No. 19-1 at 20. But again, Dr. Fabiano's general statement must be understood in the context of the more specific limitations that he identified, rather than as a broad claim that Plaintiff has no functional restrictions whatsoever.

the ALJ's rationale" from the decision). Therefore, insofar as the ALJ chose to credit Dr. Bruni's position, no correspondence between Dr. Fabiano's opinion and the ALJ's RFC was necessary.

**III.    Opinion of Sheryl Julien Campbell**

Finally, Plaintiff argues that the ALJ erred in his treatment of the opinion of treating source Sheryl Julien Campbell, N.P.  She argues that the ALJ used a "double standard" to reject her opinion while adopting those of Dr. Bruni and Dr. Fabiano.  ECF No. 19-1 at 21.  Specifically, the ALJ called Campbell's statement that Plaintiff "cannot work [at] this time" too "conclusory," which Plaintiff finds "unfair" because both Dr. Bruni's and Dr. Fabiano's opinions also contain similar "vague" statements about Plaintiff's abilities.  *Id.*; *see also* Tr. 26.

Plaintiff's argument rests on a misinterpretation of the ALJ's analysis.  To be sure, the ALJ did find Campbell's blanket statement—that Plaintiff "cannot work"—conclusory.  Tr. 26.  But the ALJ went on to consider the specific functional limitations that Campbell identified, and he gave "little weight" to those limitations because they were not supported by objective findings, were inconsistent with her own treatment notes, and rested on diagnoses from non-acceptable medical sources.  *See id.*  The ALJ's treatment of Campbell's opinion was substantively similar to his treatment of Dr. Bruni's and Dr. Fabiano's opinions: the ALJ evaluated the specific limitations that they identified and credited them based on their supportability and consistency with the other evidence in the record.  *See* Tr. 25-26.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 20) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 19) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 26, 2022
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York